## THE ROGER WILLIAMS INSURANCE COMPANY v. MARK CARRINGTON.

*Insurance—Assignment of policy after loss—Parol change in policy.*

The right to assign an accrued cause of action is statutory in Michigan and cannot be defeated.

A clause in an insurance policy providing for its forfeiture if assigned without the company's consent, cannot in Michigan prevent its assignment after the loss.

The finding of a jury cannot be disturbed if there was evidence to justify it, unless the jury were allowed to find under improper directions.

Insurance policies are not required by law to be in writing, and outside of the statute of frauds there is no rule of law which prevents written contracts from being changed by parol.

Error to St. Clair. Submitted April 7. Decided April 14.

ACTION on insurance policy. Defendant brings error.

*Whipple & Voorhies* for plaintiff in error.

*O'Brien J. Atkinson* and *Elliott G. Stevenson* for defendant in error. An insurance policy can be changed or enlarged by parol, *Seaman v. O'Hara* 29 Mich. 66; *Kennebec Co. v. Augusta Ins. Co.* 6 Gray 209; *First Baptist Church v. Brooklyn Ins. Co.* 19 N. Y. 305.

CAMPBELL, J. Action was brought in the circuit court for the county of St. Clair by Carrington as assignee of a policy of insurance originally issued by plaintiff in error to Angeline James on a livery stable stock in Port Huron. The policy bore date October 16, 1876, and was assigned after the property insured was burned up. The fire which destroyed the property was in September, 1877. The policy was by its terms made payable to Carrington as his interest should appear. It was thus arranged to secure a debt due him from Mrs. James and secured.

At the time of the fire the horses and carriages and other livery property destroyed were in a livery stable at Lexington, to which place the business had been removed in November, 1876, and one of the questions presented related to the effect of this removal.

The company after the loss repudiated any liability on the ground that no such policy was in force.

There is some difficulty in applying the assignments of error in this case, but perhaps they present sufficiently the more important issues.

Proof of loss was made in final shape about three months after the fire. It was not objected to for delay,

but for want of any insurance. There was evidence bearing very plainly on difficulties of proof caused by this dispute as to the existence of the policy, and we do not think there was anything which, as matter of law, made the delay sufficient for a forfeiture.

The assignment having been made after the loss, did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action. It is the absolute right of every person—secured in this State by statute—to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy.

Two principal questions arose on the trial, *first*, whether the policy was originally valid and continued uncanceled; and *second*, whether the removal to Lexington put an end to its force if otherwise in existence.

The original execution of the policy was admitted, but it was claimed to have been canceled for non-payment of premium. It is not claimed that notice of cancellation was given to the insured, and the verdict negatives it. But it is claimed that Linnæus Noble, the insurance agent who issued the policy, was acting in the capacity of agent for Mrs. James, and that the company by notifying him sufficiently notified her.

Upon most of the leading facts Noble's testimony is contradicted, and it was a question of fact for the jury what transactions really occurred throughout.

There was a conflict as to the precise relations of the parties concerning the obtaining of this particular policy, and how far Noble acted for Mrs. James concerning it. There was evidence of a particular bargain made about it. There was evidence that the premium was actually paid by a note, which was taken up after renewal. There was evidence that the company drew for and obtained the amount of this premium from Noble, and while he testifies it was afterwards made up to him, he does not

show how or why, and he does not show that the payment to the company was after the pretended cancellation, which was for non-payment of premium.

Upon all of these questions the jury have found in favor of the insured, and there was evidence to justify the finding.    Unless they were allowed to do this under improper directions their finding cannot be disturbed.

The charges asked, which called for instructions that Noble was agent for Mrs. James, were all too broad. Upon the testimony it cannot properly be said that there was anything more than an open question of fact.    The court could not be asked to charge either that he was her agent or that a partial detail of facts would make him such, when there were other facts explaining them, besides many contradicting them.    The charges asked were not so drawn as to leave the jury any discretion upon matters of dispute.    And we are strongly inclined to think that there was no testimony which fairly tended to show that in this particular transaction Noble could have been found by the jury to have acted for any material purpose as agent for any but the company, whatever may have been his position in regard to other transactions.

Upon the question of assent to the transfer of the insured property to Lexington there is also some conflict of testimony.    There was positive testimony that before the removal the agent was notified of the desire to remove it, and that it would not be removed until provision was . made to keep it protected by the insurance, and that Noble told James, the husband and agent of the insured, before the removal that the proper steps had been taken. There was also evidence, which though objected to was clearly relevant, that shortly before the loss Noble was written to for the purpose of having the policy renewed when it should run out, and answered promising to attend to it.    There was also other evidence on the same subject.    The agent's own books showed a memorandum purporting to be a new insurance for a year from the

time of the removal, covering the property at Lexington, but claimed it was a mere memorandum of a proposed insurance that was never made.   Upon all these facts the jury certainly had a right to believe the agent had done what James said he had, and that there had been an absolute representation of insurance and an agreement to that effect.   The policy contained an express authority in the insured to surrender the policy and get back a part of the premium, and no return of premium was pretended to have been made, while the jury must have found it had all been paid.

The objection that such change in the policy was void unless in writing, is disposed of by our own previous decisions.   There is no rule of law which, in cases outside of the Statute of Frauds, prevents written contracts from being changed by parol, or which requires insurance contracts to be in writing.   The subject was fully considered in *Westchester Fire Ins. Co. v. Earle* 33 Mich. 143, where the cases are cited and commented on.   We think there is no difficulty in the way of the contract relied on.

Some question arose whether a certain stallion was properly included among the stock.   There was testimony that except at certain seasons he was used as a livery horse, and we think he was properly so found by the jury.

We do not discover anything in the record indicating that any action has been had of which plaintiff in error can complain.

The judgment must be affirmed with costs.

The other Justices concurred.