ACTION AUTO STORES, INC.,
a Michigan corporation,
Plaintiff,

v.

UNITED CAPITOL INSURANCE
COMPANY, Garnishee–
Defendant,

and

Oscar W. Larson Company, a Michigan
corporation, Defendant.

No. 5:91–CV–32.

United States District Court,
W.D. Michigan, S.D.

Feb. 8, 1993.

418

L. David Lawson, Winegarden, Shedd, Haley, Lindholm & Robertson, Flint, MI, for plaintiff.

Constantine N. Kallas, Leonard A. Henk, Kathlyn M. Rasmussen, Kallas & Henk, P.C., Bloomfield Hills, MI, for garnishee, defendant.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

Pending before the Court are cross-motions for summary judgment. The issue before the Court is whether garnishee-defendant United Capitol Insurance Company

("garnishee") is obligated under an insurance contract to pay garnishee-plaintiff Action Auto Company ("plaintiff") funds that plaintiff was awarded in a lawsuit it brought against defendant Oscar W. Larson Company. Plaintiff contends that garnishee has a contractual obligation to pay the sum. Garnishee asserts that a settlement agreement between defendant and plaintiff negates any duty it may have had to pay, and it further argues that various exclusions contained in the insurance policy preclude its obligation to pay.[1] Finally, garnishee argues that "known risk" and "loss in progress" doctrines bar coverage.

## I.

Defendant was employed by plaintiff and Sun Oil Company to install gasoline containment systems at three Action Auto locations. In 1988, defendant filed various actions in state court for money it claimed plaintiff owed it for the work it had done. Plaintiff counterclaimed for breach of express and implied warranties, alleging that defendant had negligently installed the systems. Plaintiff also alleged that defendant failed to remove contaminated soil from some of the locations. The actions were consolidated.

Garnishee agreed to defend defendant in the action but reserved the right to contest coverage, at least for some claims.[2] Plaintiff and defendant entered a partial settlement prior to trial. Garnishee was not a party to this settlement, and it apparently had no knowledge of the agreement until after it was made.[3] According to the settlement, defendant dismissed its claims with prejudice. In return, plaintiff dismissed some of its claims and agreed not to execute on or enforce a judgment against any of defendant's assets except on those arising out of insurance policies or contracts. Defendant apparently stopped contesting some claims and a default was entered in the amount of $2,197,000.00. Plaintiff's other claims were tried in state court where a jury rendered a verdict of two million dollars against defendant.

Plaintiff filed a writ of garnishment in the Ingham County Circuit Court against garnishee. Garnishee filed a garnishee disclosure statement in which it alleged that it was not indebted to defendant and that it should not be subject to garnishment. Garnishee argued that no underlying debt existed since the settlement agreement released defendant from liability, and it also argued that various provisions in the insurance policy prevented garnishment. On May 15, 1991, garnishee removed the case to this Court. Plaintiff moved to remand, but in an Opinion and Order dated January 13, 1992, this Court determined that it had subject matter jurisdiction over the action and that remand was improper. Cross-motions for summary judgment were subsequently filed.

## II.

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.)*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly

---

1. Larson has filed no motions in this action. The dispute is essentially between Action and United Capitol. As discussed in the Court's Opinion and Order of January 13, 1992, Larson's interests are aligned with Action's, thus creating complete diversity of parties.

2. Two reservation of rights letters were sent to defendant. The first letter, dated October 3, 1989, cited section F(2) of the "absolute pollution exclusion" clause of the policy. The October 3 letter also stated that "United Capitol Insurance Company does not waive any other de-

fenses is (sic) may have under the Policy including the late notification of the loss." The second letter, dated March 26, 1990, cites other exclusions at issue in this lawsuit.

3. This is implied by garnishee though not overtly stated. The settlement agreement itself states that defendant "through its counsel, disclosed its intent to enter into, and provided the draft dated May 1, 1990 of, (sic) this Agreement to any and all actual or potential insurers of claims against it...." Settlement Agreement, Garnishee's Motion for Summary Judgment, Exhibit 3, at 5, ¶ C.

probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this has been done, the non-moving party must come forward with specific facts showing that there is a material issue of fact on an issue which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

### III.

Garnishee's motion for summary judgment asks this Court to find that it has no obligation to pay damages either because the insurance policy prohibits liability in situations in which a settlement agreement is executed without the insurer's consent or because exclusions contained in the policy prohibit liability for the kind of damage at issue in this litigation. Plaintiff has made a separate motion for summary judgment in which it asks that various defenses to garnishment be declared legally insufficient.

The Court notes that while the parties have submitted several briefs apiece, the number of issues in contention has made it impossible for any one issue to be extensively briefed. While this Opinion is dispositive of some issues, it requires that others be briefed more fully and resubmitted for the Court's consideration.

### IV.

Garnishee argues that because a settlement agreement was entered between plaintiff and defendant, defendant was not legally obligated to pay the judgment, negating garnishee's obligation under the insurance policy. In addition, garnishee contends that entering the agreement without its consent was a violation of the insurance contract releasing it from any obligation to pay.

### A.

▮ Garnishee argues that because plaintiff agreed to collect its judgment only from insurance proceeds instead of other assets of defendant, defendant is not legally obligated to pay any damages. Garnishee concludes that because the insurance agreement *only* covers costs the insured must pay, the fact that defendant has avoided incurring a legal obligation relieves it of its duty.

This case is governed by Michigan law.[4] The Michigan case most closely on point is *Alyas v. Gillard,* 180 Mich.App. 154, 446 N.W.2d 610 (1989). In this case, the Michigan Court of Appeals held that a consent judgment compelling a plaintiff to collect only from defendant's insurer did not relieve defendant from "any and all liability" and thus relieve the insurer from its contractual obligation to pay the claim. Garnishee claims that this case is distinguishable, however, because the insurer involved in *Alyas* refused to defend the insured.

The *Alyas* court first reasoned that the settlement agreement did not release defendant from liability but that, instead, it merely limited the assets plaintiff could recover to insurance proceeds. Using this line of reasoning, plaintiff argues that the agreement in the instant case did not relieve defendant of liability but merely created a separate contract in which plaintiff agreed not to execute judgment against certain assets. According to plaintiff, while defendant may sue for breach of contract if plaintiff fails to abide by this clause, the contract does not relieve defendant of liability.

The *Alyas* court, however, gave other reasons for its decision. The court discussed

---

4. A federal court sitting in diversity must apply the law of the state in which it sits, including that state's choice of law principles. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct.

1020, 85 L.Ed. 1477 (1941). This Court is confident that the Michigan court would apply Michigan law to resolve this case. The parties have also assumed that Michigan law applies.

*Sargent v. Johnson,*[5] an Eighth Circuit case which held that an insurer had no obligation to pay insurance when an insured entered a settlement agreement which relieved the insured from any obligation and placed all obligation on the insurer. The *Alyas* court noted that the case before it was distinguishable because *Sargent* concerned the bad faith of the insured while the case before it concerned the bad faith of the insurer. This reasoning indicates that the enforceability of settlement agreements turns on an examination of whether or not the parties have acted in good faith or bad faith.

After closely reading the case, the Court interprets *Alyas* to be based primarily on the first rationale discussed by the court. The Court finds that the case turns on the fact that the settlement agreement was not a release from liability but a separate contract limiting the assets which could be collected. The Court finds that *Sargent* does not apply Michigan law and that *Alyas* should be followed. The Court therefore grants plaintiff's motion for summary judgment to the extent that it asks the Court to declare this defense insufficient.

### B.

Garnishee also claims that no coverage exists because various provisions in the insurance policy preclude coverage in situations in which the insured reaches a settlement without the insurer's consent. Garnishee claims that the settlement agreement was executed in violation of § 4, ¶ 2(c), (d) and § 4 ¶ 3 of the Insurance Policy. These paragraphs read as follows:

2. Duties in the Event of Occurrence, Claim Or Suit.

. . . .

c. You and any other involved insured must

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit" and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial. . . . An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, § 4 ¶ 2(c), (d) and § 4 ¶ 3.

The Court finds that there was no violation of paragraphs 2(d) or 3 of the Insurance Policy and that there is a question of fact as to whether there was a violation of paragraph 2(c). Paragraph 2(d) was clearly not violated because it requires only that the insured not voluntarily make a payment, assume any legal obligation, or incur expense without the consent of the insurer. Defendant did *not* assume a legal obligation to pay any damages to plaintiff through the settlement agreement. The agreement *relieved* defendant of some liability and directed plaintiff as to the assets that could be collected *in the event* defendant was later found to be liable. The agreement did not compel

---

**5.** *Sargent v. Johnson,* 551 F.2d 221 (8th Cir. 1977). The case applied Minnesota law.

defendant or garnishee to make any payment or incur any expense nor did it obligate defendant or garnishee to pay the plaintiff anything. Therefore, it did not violate section 2(d) of the insurance policy.[6]

Garnishee states that under paragraph 3, it can only be sued to recover on "an agreed upon settlement" or a "final judgment." Because an agreed upon settlement is defined as one in which the insurer participates, garnishee argues that the insured cannot recover based upon the settlement. The Court agrees with garnishee's logic, and if the settlement agreement were the basis of the obligation, this paragraph would prevent coverage. A final judgment of a court, however, not the settlement agreement, forms the basis of the judgment that garnishee is being asked to pay. The provision, therefore, does not prohibit garnishee's liability.

■ There is a question of fact as to whether paragraph 2(c)(3) was violated. This provision requires that the insured cooperate with the insurer in defending a claim. Garnishee argues that after entering the settlement agreement defendant lost all incentive to help garnishee prepare a defense and that defendant's refusal to cooperate relieves it of liability. Garnishee has presented no proof, however, of defendant's lack of cooperation. Furthermore, under Michigan law, the insurer must show that the insured's lack of compliance materially injured its ability to contest the merits of the claims. *Anderson v. Kemper Insurance Co.,* 128 Mich.App. 249, 253–54, 340 N.W.2d 87, 90 (1983). The question of prejudice is one of fact which is best left for resolution by a jury. Because a question of fact exists as to whether the cooperation clause was violated, the Court denies both plaintiff's and defendant's motion for summary judgment on this issue.

## C.

■ Garnishee maintains that the settlement agreement violates paragraph E of the "Common Policy Conditions" section of the insurance policy. According to garnishee, the settlement agreement constituted the assignment of the insurance policy which is expressly forbidden by paragraph E of the document. Paragraph E refers to premiums, and the Court sees nothing in the section prohibiting assignment or transfer of the policy. Paragraph F of the "Common Policy Conditions" document does prohibit the transfer of rights and duties under the policy without the insurer's written consent except in the case of death of an individual named insured.[7]

Garnishee relies on *Employers Mutual v. Michigan Mutual,* 101 Mich.App. 697, 300 N.W.2d 682 (1980), for the proposition that the assignment of a right in violation of an anti-assignment clause in an insurance policy voids coverage. Plaintiff points out, however, that *Employers* is distinguishable from the instant case because in *Employers* the insured property was transferred prior to the loss the insurance covered. The case is also distinguishable because the policy's prohibition was far more clear and unambiguous than that contained in the instant policy. The policy in *Employers* specifically stated that the insurance "shall be void" in case either the policy or the insured interest is "sold, assigned, transferred or pledged without the previous consent in writing of the company." The clause at issue in this case does not contain language making the insurance void[8] nor does it specifically mention assignment.

Plaintiff also cites Section 792 of Volume 43 of *American Jurisprudence,* Second Edition, for the proposition that such general stipulations prohibiting assignment without the insurer's consent apply only to assignments before loss and not against assignment after loss. The cited paragraph notes that a provision against assignment after loss is null

---

6. This factor also distinguishes the case from the case authority cited by plaintiff.

7. In addition to the arguments discussed below, plaintiff maintains that no assignment was made in the settlement agreement because the agreement merely promises that an assignment will be made at a future time. Plaintiff argues that such

a promise is distinguishable from an assignment itself.

8. The document does state that "All Coverage Parts included in this policy are subject to the following conditions."

and void as inconsistent with the covenant of indemnity and contrary to public policy. 43 Am.Jur.2d *Insurance* § 792 (1982). *See also Roger Williams Insurance Company v. Carrington,* 43 Mich. 252, 5 N.W. 303 (1880) (invalidating a provision which required forfeiture of a policy for post-lost assignment without consent of the insurer.)

Because the clause at issue is itself ambiguous and because there is a strong public policy in favor of assignment of such contract rights, the Court holds that paragraph F of the "Common Policy Conditions" prohibits only transfer and assignment of a right prior to loss and does not prohibit assignment of an accrued cause of action. Plaintiff's motion for summary judgment is granted to the extent that it asks that the Court find that the defense of assignment of the insurance policy does not bar coverage.

### V.

Garnishee asserts several arguments as to why various exclusions contained in its policy prohibit garnishment. The Court discusses each in turn. When interpreting the insurance policy at issue, the Court bears in mind that Michigan courts have held "(1) that an ambiguous contract provision must be construed against the insurer and in favor of the insured, and (2) that exclusionary clauses in insurance policies are to be strictly construed against the insurer." *Farm Bureau Mutual Ins. Co. v. Stark,* 437 Mich. 175, 181, 468 N.W.2d 498, 501 (1991). If the meaning of terms used in the contract are clear and unambiguous, however, their terms are "to be taken and understood in their plain, ordinary, and popular sense." *Id.* (internal citations omitted).

### A.

▮ Garnishee claims that it is released from liability through an "absolute pollution exclusion" endorsement which was contained in all three policies it issued to defendant. That exclusion reads as follows:

F. This insurance does not apply to:
   (1) "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

   (a) at or from premises you own, rent or occupy;

   (b) at or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste material;

   (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

   (d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations

   (i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants

   (ii) if the pollutants are brought on or to the site or location by or for you.

   (2) any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain treat (sic), detoxify or neutralize pollutants.

The word "pollutants" as used herein means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, vapor, soot, fumes, acids, biological elements and agents, and visual esthetics, the presence of any or all which (sic) adversely affects human health or welfare, unfavorably alters ecological balances of importance to human life, adversely affects other species of importance to mankind, or degrades the vitality of the environment for esthetic, cultural, and/or historical purposes.

The word "waste material" as used herein means materials which are intended to be or have been recycled, reconditioned or reclaimed.

Insurance Policy, Garnishee's Motion for Summary Judgment, Exhibit 1, UC–253(9–87) § F.

Garnishee appears to rely on sections F(1)(d)(i) and F(2) of the exclusion agreement. The Court finds that section F(2) is clearly inapplicable because there is no evidence that the government ever directed de-

fendant to take any action whatsoever with regard to the pollutants.[9]

Plaintiff argues that section F(1)(d)(i) does not apply because the issue before the jury in the state suit involved only damages arising from leaks or discharges of fuel from equipment on which Larson performed defective work and that the jury was told not to award damages based upon the cleanup of contamination which was on the sites prior to the contract.[10] Plaintiff maintains that any claims against defendant based upon improper cleanup were dismissed prior to the trial and are not the subject of the present garnishment action. Plaintiff asserts that the work at issue in the state action was unrelated to testing and cleanup of pollutants and does not fall within the scope of F(1)(d)(i). Plaintiff supports this position by quoting the instructions given to the jury. *Oscar W. Larson v. Action Auto Stores, Inc.*, 88–61169–CK, Trial Transcript at 92–93 (Ingham County Cir.Ct. June 7, 1990). While garnishee provides evidence that defendant's cleanup efforts were mentioned at trial, it sets forth no evidence showing that the jury considered any claims for testing, cleaning up, monitoring, etc., of pollutants. The Court thus cannot grant garnishee's motion for summary judgment based upon this exclusion.[11] Plaintiff's motion for summary judgment, however, is granted to the extent that it asks the Court to find this defense to garnishment to be invalid.

### B.

■ Garnishee maintains that exclusion 2(j)(5) negates its duty to pay. Plaintiff claims that garnishee is estopped from asserting this defense because it was not mentioned until its second "reservation of rights" letter. Plaintiff relies primarily upon *Meirthew v. Last*, 376 Mich. 33, 135 N.W.2d 353 (1965). *Meirthew* held that an insurer could not rely on a general reservation of rights letter to claim that it had no duty to pay after it had defended the insured in an action. *Meirthew* is distinguishable from the case *sub judice* because the insurance company did not give notice of the particular exclusion it intended to rely upon until garnishment proceedings. In this case, garnishee gave a detailed notice stating that it intended to rely on provision 2(j)(5) two months in advance of trial. There is no evidence that garnishee knew that it would rely on this exclusion earlier or that it delayed in informing defendant of its intent. In addition, eight months before trial it provided a general reservation of rights letter which at least put defendant on notice that the insurer might contest coverage. There is no evidence that defendant suffered prejudice from garnishee's actions. The Court therefore holds that the defense was not waived.

■ Plaintiff asserts that exclusion 2(j)(5) should not apply by its own terms as defendant was not performing operations *on* the real property that was damaged. Exclusion 2(j)(5) states:

2. This insurance does not apply to:

. . . .

j. "Property damage" to:

. . . .

---

9. Garnishee notes that if the government *had* ordered defendant to clean the pollutants, it would not have to pay for such costs. Garnishee argues that plaintiff is seeking to get reimbursement for costs for which it is liable as an owner under the same statutes, therefore it should not have to pay the costs. The Court finds such an argument unpersuasive as the language of the contract limits the application of section F(2) to situations in which the *insured* is ordered to conduct cleanup by the government.

10. Garnishee has filed a separate summary judgment motion in which it claims that this same pollution exclusion policy applies to exclude money awarded to plaintiff through the default judgment entered against defendant in state

court. Plaintiff's time for responding to this motion has not yet expired, so the Court does not address it at this time.

11. Garnishee may be attempting to argue that because Larson was hired to install equipment to "contain gasoline," (*see* Garnishee's Brief in Support of its Motion for Summary Judgment at 17), it was performing operations relating to containment of pollution. The Court, however, agrees with plaintiff's analysis that the gasoline was not a pollutant nor was it considered a pollutant while it was in the container. The primary purpose for installing the system was to promote consumer use of gasoline, not to remedy a pollution problem.

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

Insurance Policy, Garnishee's Brief in Support of its Motion for Summary Judgment, Exhibit 1, § 1 ¶ 2(j)(5).

Plaintiff claims that Larson was only performing operations "on" dispensers, pipes, and related products. It argues that the exclusion was designed to cover damages to such items which may constitute fixtures, and therefore real property, when installed on real property. Plaintiff claims that the exclusion is not meant to refer to the surrounding property which was polluted.

Garnishee claims that Larson performed operations on the polluted property in question by physically digging the real property to install the gasoline containment equipment. Garnishee argues that the narrow reading of the clause suggested by plaintiff renders the clause nonsensical as other exclusions in the contract already exclude damage done to the insured's product and materials.

The Court does not read the exclusion provision as narrowly as plaintiff, and it holds that the exclusion prevents coverage for damage done to land or other property that defendant physically worked on. However, the facts presented do not reveal whether all of the property damage at issue was done to such land. The Court finds that this issue should be more fully addressed by the parties.[12] Specifically, the parties should inform the Court of what property was found to be polluted in the state action and of the type of work performed "on" such property. At this time, both plaintiff's and garnishee's motions for summary judgment must be denied.

## C.

■ Garnishee contends that exclusion 2(m) also precludes its duty to provide coverage. That exclusion reads:

2. The insurance does not apply to:

. . . .

m. property damage to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Insurance Policy, Garnishee's Brief in Support of its Motion for Summary Judgment, Exhibit 1, § 1 ¶ 2(m).

Impaired property is defined as follows:

5. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

Insurance Policy, Garnishee's Brief in Support of its Motion for Summary Judgment, Exhibit 1, § 5 ¶ 5.

Plaintiff argues that this exclusion is inapplicable because the property at issue cannot be restored to use by repair, replacement, adjustment, or removal of the containment

---

12. Plaintiff also asserts that the exclusion does not apply because it is limited to damage which occurs at the time work is being performed. The Court holds that this issue should also be rebriefed by the parties.

system.[13] Garnishee relies upon *Reliance Insurance Co. v. Mogavero*[14] in which the federal court for the District of Maryland found that a similar exclusion prohibited coverage for property damage caused by defective construction work performed by the insured. While the allegation against the insured in *Mogavero* was similarly for breach of contract and breach of warranty, the exclusion in that case was not identical to the one at issue here. Significantly, it did not limit the exclusion to impaired property defined as property that can be restored to use by the repair, replacement, adjustment, or removal of the insured's product or work or the insured's fulfilling the terms of the contract or agreement. Therefore, the Court declines to adopt the *Mogavero* court's holding.

The Court finds that no evidence has been presented that any damage done to property surrounding the containment system can be remedied by the repair, replacement, or adjustment of defendant's work product. Furthermore, such a result is illogical as any pollution done to surrounding property could not possibly be remedied or rectified by the removal of the defective work product. Garnishee's motion for summary judgment must therefore be denied on this issue. Plaintiff's motion is granted to the extent that it asks that the Court hold this defense to be invalid.

### D.

■ Garnishee also contends that the exclusionary provision contained in section 2(n) precludes coverage. Section 2(n) states:

2. This insurance does not apply to:

. . . .

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Insurance Policy, Garnishee's Brief in Support of its Motion for Summary Judgment, Exhibit 1, § 1 ¶ 2(n).

Garnishee contends that this provision applies because polluted property had to be removed because of a defect in said property caused by defendant's product. Plaintiff responds that paragraph 2(n) applies only to products, work, or property that is taken out of the market or out of use because of withdrawal or recall. Plaintiff maintains that the exclusion is referred to as the "sistership" exclusion because it arises from the recall of a group of airplanes when one of its "sister" ships evidenced a structural defect.

Plaintiff cites *Honeycomb Systems, Inc. v. Admiral Insurance Company,* 567 F.Supp. 1400, 1406–07 (D.Me.1983). In *Honeycomb,* the District of Maine cites multiple district cases and an insurance treatise to conclude that a similar provision was designed "to limit the insurer's exposure in cases where, because of the actual failure of the insured's product, similar products are withdrawn from use to prevent the failure of those other products, which have not yet failed." *Id.* at 1406. It concluded that the rationale behind the exclusion was to prevent the insurer from being saddled with the cost of preventing other failures. *Id.*

The Court finds that plaintiff's reading of the exclusion is more logical than garnishee's. In addition to relying on the analysis done in the *Honeycomb* case, the Court notes that the language of the exclusion itself does not support garnishee's reading of the clause. The exclusion refers to "withdrawal from the market or from use." This language does not encompass the removal of polluted earth from the work site. Garnishee's motion for summary judgment cannot be granted based upon this exclusion. Plaintiff's motion for summary judgment is granted to the extent

---

**13.** None of the subsequent briefs filed by garnishee address this exclusion.

**14.** *Reliance Insurance Co. v. Mogavero,* 640 F.Supp. 84 (D.Md.1986).

that it asks this Court to find the defense to be invalid.

### E.

Plaintiff's motion for summary judgment asks that this Court find invalid several other defenses based upon specific exclusions in the policy. These defenses were raised by garnishee in its original garnishee disclosure statement. Specifically, plaintiff asks that the Court find invalid:

(1) the defense that United Capitol has no liability under its policies for "products completed operations hazard" (plaintiff's Motion for Summary Judgment at ¶ C);

(2) the defense that coverage is barred by exclusion 2(g) of the Policy (plaintiff's Motion for Summary Judgment at ¶ H);

(3) the defense that coverage is barred by exclusion 2(1) (plaintiff's Motion for Summary Judgment at ¶ I);

(4) the defense that coverage is barred by exclusion 2(b) (plaintiff's Motion for Summary Judgment at ¶ K);

(5) the defense that there is no coverage due to late notice or lack of notice (plaintiff's Motion for Summary Judgment at ¶ L); and

(6) the defense that there is no coverage under exclusion J(1) or J(6) of the insurance policy (Plaintiff's Motion for Summary Judgment at ¶ B [15]).

Garnishee's reply to plaintiff's summary judgment motion does not respond to plaintiff's arguments about these exclusions.[16] While plaintiff has addressed each of the exclusions, they were not extensively briefed. After reading plaintiff's arguments and examining the exclusions of the policy on which they are based, the Court denies the motions based upon insufficient briefing. This is not a decision on the merits, and either party may submit a renewed summary judgment based upon these exclusions if the motion is accompanied by a more detailed brief.

Because garnishee has not used these exclusions as a basis for its own summary judgment motion and because it has not responded to the arguments plaintiff's summary judgment motion raises about the exclusions, the Court questions whether garnishee itself wishes to continue to rely upon these defenses. Garnishee is urged to reassess it position regarding these defenses and, if it no longer wishes to rely upon them, it is urged to inform the Court through stipulation or motion that it will withdraw any defense based upon such exclusions.

### VI.

In its brief in response to plaintiff's motion for summary judgment, garnishee contends that there is no coverage under the insurance policies at issue because of the "loss in progress" doctrine and the "known risk" doctrine. Plaintiff argues that because its motion for summary judgment sought dismissal of certain defenses plead by garnishee, it is inappropriate at this time for garnishee to raise the question of coverage. Plaintiff argues that, at the very least, it should be allowed more time and space to fully brief the issues. The Court determines that while this argument may well be the appropriate subject of a summary judgment motion brought by garnishee, it is not properly raised in a responsive brief.[17] The Court therefore declines to address the issue at this time. The Court makes clear that this is not a decision on the merits, and, as the issue may well be dispositive to the case, it allows garnishee time to

---

15. Paragraph B of plaintiff's motion for summary judgment refers to exclusion J of the insurance policy. The Court has addressed exclusion J(5) of the policy and found that the issue should be further briefed by the parties. The Court did not address exclusions J(1) or J(6) in its Opinion.

16. Garnishee does address the "products complete operations hazard" clause in its reply brief. Garnishee states that any coverage plaintiff had under this section is negated by the Absolute Pollution Exclusion Endorsement. Garnishee

should reconsider its position in light of the Court's decision with regard to that exclusion.

17. Plaintiff also contends that the issue is improperly raised because the defense was not contained in garnishee's garnishee disclosure statement. Garnishee has since filed a motion to amend the garnishee disclosure statement, and the Court determines that said motion should be granted.

**428**

file another summary judgment motion addressing the issue.

### VII.

Garnishee's motion for summary judgment requests that this Court find that it has no obligation to pay the judgment entered against defendant because such payment is prohibited because defendant entered a settlement agreement with plaintiff or because various exclusions in the insurance policy prohibit coverage. For the reasons stated above, garnishee's motion must be denied. Also for the reasons stated above, plaintiff's motion is granted in part and denied in part.