*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VHS OF MICHIGAN, INC, doing business as
DETROIT MEDICAL CENTER,

Plaintiff-Appellant,

v

EVEREST NATIONAL INSURANCE
COMPANY, MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY, and
UNNAMED ASSIGNEE OF MICHIGAN
AUTOMOBILE INSURANCE PLACEMENT
FACILITY,

Defendants-Appellees.

UNPUBLISHED
May 9, 2019

No. 341190
Wayne Circuit Court
LC No. 17-004224-NF

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Plaintiff, VHS of Michigan, Inc., doing business as Detroit Medical Center, appeals on delayed leave granted[1] the order of the trial court granting summary disposition to defendants Everest National Insurance Company (Everest), Michigan Automobile Insurance Placement Facility (MAIPF), and the unnamed assignee of the Michigan Automobile Insurance Placement Facility. We affirm.

## I. FACTS

This case involves a claim by plaintiff, a healthcare provider, for reimbursement for health care services provided to Steve Ellis. Ellis was injured in a motor vehicle accident on March 15, 2016. Ellis did not have a policy of no-fault insurance, and did not reside with a

---

[1] See *VHS of Michigan, Inc v Everest Nat'l Ins Co*, unpublished order of the Court of Appeals, entered April 26, 2018 (Docket No. 341190).

-1-

relative who had an applicable no-fault policy. At the time of the accident, Ellis was driving a vehicle owned by Rhonda Finnister, who allegedly had purchased a policy of no-fault insurance from Everest.

As a result of his injuries in the accident, Ellis was hospitalized at Detroit Medical Center on March 15, 2016, and again on April 13, 2016, with plaintiff allegedly providing health care services in excess of $194,000. Upon each admission to the hospital, Ellis signed a Consent to Treat form, which provided, in relevant part:

> **Contract for Services**: I agree to pay in full any and all charges for hospital and provider services not otherwise covered by insurance benefits. I assign and authorize payment to be made directly to the hospital and/or providers of all healthcare benefits otherwise payable to me, but not exceeding the charges for this period of hospitalization. . . .

Plaintiff sought reimbursement for Ellis' medical treatment from defendants, who declined to pay. On March 10, 2017, plaintiff initiated this action against defendants, alleging that it was entitled to reimbursement as a third party beneficiary for the medical services provided to Ellis, but also alleging entitlement to reimbursement by virtue of the Consent to Treat forms that assigned Ellis' rights to payment. In lieu of filing an answer, MAIPF moved for summary disposition under MCR 2.116(C)(8) and (10), and Everest moved for summary disposition under MCR 2.116(C)(8), contending that plaintiff lacked standing to bring the suit in light of our Supreme Court's decision in *Covenant Medical Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). Defendants also contended that the Consent to Treat forms were not valid assignments of no-fault benefits.

Thereafter, on June 11, 2017, Ellis signed an assignment that provided:

> I, Steve Ellis (Assignor), do hereby assign my right to collect no-fault insurance benefits from the responsible no-fault insurance company and Michigan Automobile Insurance Placement Facility, for unpaid services rendered by VHS of Michigan, Inc., d/b/a The Detroit Medical Center (Assignee). This is an assignment for services already rendered only; this is not an assignment of benefits for services rendered in the future or after the date of this document. Assignor agrees that as consideration for this assignment, Assignee assumes the burden, otherwise borne by the Assignor, to pursue payment for services rendered by Assignee, from the insurance company or payor entity responsible to pay for such services. This assignment shall be irrevocable unless terminated by mutual agreement of Assignor and Assignee in writing.

Plaintiff responded to defendants' motions for summary disposition, additionally contending that the June 11, 2017 assignment operated to assign to plaintiff Ellis' right to benefits. Defendants replied, arguing that the June 11, 2017 assignment was limited by the one-year-back rule of the no-fault act.

The trial court granted defendants summary disposition under MCR 2.116(C)(8) and (10), holding that under *Covenant*, plaintiff is not a third-party beneficiary of the insurance

policy in question, and further holding that Ellis did not validly assign his right to payment to plaintiff. Plaintiff now appeals from that order.

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(8) is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*.

When reviewing an order granting summary disposition under MCR 2.116(C)(10), this Court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. We also review de novo issues involving the proper interpretation of statutes and contracts. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

### B. *COVENANT*

In *Covenant*, our Supreme Court held that healthcare providers lack standing to bring a direct cause of action against insurers for PIP benefits. *Covenant Medical Ctr, Inc*, 500 Mich at 196. However, the Court also noted that its holding in that case was "not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40.

In this case, plaintiff filed its complaint on March 10, 2017, before *Covenant* was issued, seeking payment as a third-party beneficiary under pre-*Covenant* case law that permitted a direct lawsuit by a healthcare provider, but also seeking payment by virtue of the March and April 2016 Consent to Treat forms signed by Ellis that included assignment language. After the *Covenant* decision was issued, defendants moved for summary disposition based upon that decision. Plaintiff responded to the motions, arguing that it was still entitled to payment by virtue of the March and April 2016 assignments, and also the assignment dated June 11, 2017.

The trial court granted defendants summary disposition, holding that in light of *Covenant*, plaintiff was not a third-party beneficiary entitled to bring the cause of action. On appeal, plaintiff does not dispute this holding. The trial court also held, however, that the purported assignments did not effectively assign Ellis' rights to plaintiff because (1) the anti-assignment clause of the Everest policy precludes the assignment, (2) the one-year-back rule limits any validity of the June 11, 2017 assignment, and (3) the consent forms were not really assignments. On appeal, plaintiff challenges these holdings.

## C. ASSIGNMENT OF RIGHTS

Plaintiff first argues that the trial court erred in determining that the anti-assignment clause of the Everest policy operated to bar Ellis from assigning his cause of action for PIP benefits to plaintiff. We agree.

The first inquiry is whether, after *Covenant*, a person entitled to PIP benefits can assign those benefits to a health care provider for payment of health care services. This Court answered that question in the affirmative, in the context of rights under a policy of no-fault insurance, in *Jawad A Shah MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182; 920 NW2d 148 (2018). In that case, this Court held that an anti-assignment clause in a no-fault policy is unenforceable to prohibit an assignment that occurred after the loss or the accrual of the claim to payment "because such a prohibition of assignment violates Michigan public policy that is part of our common law as set forth by our Supreme Court." *Id*. at 200. In *Shah*, this Court quoted the Michigan Supreme Court's decision in *Roger Williams Ins Co v Carrington*, 43 Mich 252; 5 NW 303 (1880):

> The assignment having been made after the loss, did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action. It is the absolute right of every person—secured in this State by statute—to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy. [*Shah*, 324 Mich App at 199, quoting *Roger Williams*, 43 Mich at 254.]

This Court concluded that, because our Supreme Court has never rejected the analysis of *Roger Williams*, it is controlling and, as a result, assignments made after a loss are valid and enforceable. *Shah*, 324 Mich App at 199-200; in accord, *Henry Ford Health System v Everest Nat'l Ins*, ___ Mich App ___; ___ NW2d ___ (2018) (Docket No. 341563), slip op at 3, concluding that the anti-assignment clause of the insurer's policy was unenforceable under the facts of that case, which this Court noted were identical to those of *Shah*. Applying the reasoning of *Shah* to this case, the anti-assignment clause of the Everest policy in this case likewise violates public policy, and therefore is inapplicable to bar the assignment of rights under the policy. The trial court therefore erred in determining that the anti-assignment clause of the Everest policy was valid.

Moreover, Ellis was not a party to the Everest policy in this case. Instead, Ellis is entitled to PIP benefits under the no-fault act, perhaps from Everest, or perhaps from another defendant, as an uninsured motorist. But because Ellis was not a party to the contract with Everest, he did not possess a contractual right to assign, and instead was assigning his rights to payment under the no-fault act. The next inquiry, then, is whether it is possible for one to assign a right to payment under the no-fault act. We answer this question in the affirmative.

The no-fault act requires an insurer to pay PIP benefits for accidental bodily injury "arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, subject to the provisions of the no-fault act." *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 172; 577 NW2d 909 (1998), citing MCL 500.3105(1). Under the no-

fault act, PIP benefits are payable "to or for the benefit of an injured person." MCL 500.3112. Such benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Our Supreme Court in *Covenant* made clear that the claim for payment of PIP benefits under the no-fault act belongs to the injured party. *Covenant*, 500 Mich at 210-217. Because Ellis had a statutory claim to payment under the no-fault act, he had a cause of action for those benefits when the defendant insurers refused to pay.

"Generally, all legitimate causes of action are assignable." *Grand Traverse Convention & Visitor's Bureau v Park Place Motor Inn, Inc*, 176 Mich App 445, 448; 440 NW2d 28 (1989). Our review of the no-fault act reveals nothing that indicates that the Legislature intended to prohibit an injured party from assigning his or her statutory right to payment of PIP benefits under the act. See *id*. at 448 (this Court's primary objective is to give effect to the intent of the Legislature). We note that such a prohibition would in fact be contrary to the no-fault act, MCL 500.3143 (prohibiting only assignments of future benefits), the general rule under Michigan law that "all legitimate causes of action are assignable," *Grand Traverse*, 176 Mich App at 448, and the holding of *Shah* (accrued claims for PIP benefits under a policy of no-fault insurance are freely assignable). See *Shah*, 324 Mich App at 200.

We further conclude that the assignment of the right to payment under the no-fault act includes the assignment of the cause of action to recover payment. "[A]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *Prof Rehab Assoc*, 228 Mich App at 177. Thus, in this case, if Ellis was entitled to payment of benefits that were past or presently due under the no-fault act, and in fact assigned that right to plaintiff, then plaintiff, as assignee of Ellis' right to recover PIP benefits, possesses whatever rights Ellis had to recover the benefits.

### D. ONE-YEAR-BACK-RULE

Plaintiff next contends that the June 11, 2017 assignment validly assigned Ellis' right to payment to plaintiff. Plaintiff argues that the trial court erred in holding that the one-year-back rule operated to limit the assigned benefits to those benefits incurred within one year before the June 11, 2017 assignment. We disagree.

Section 3145(1) of the no-fault act, MCL 500.3145(1), provides what is often referred to as the one-year-back rule, and states, in relevant part:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1

year before the date on which the action was commenced. . . . [MCL 500.3145(1).]

The purpose of the one-year-back rule is to "limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012).

In *Shah*, this Court addressed the applicability of the one-year-back rule. There, the plaintiff healthcare providers filed their complaint pre-*Covenant* under a theory of being third-party beneficiaries. After the *Covenant* decision was issued, the plaintiffs obtained an assignment of benefits from the insured. The plaintiffs sought to amend[2] their complaint to proceed under a theory of assignment, and argued that the assignment should relate back to the date of the original complaint, which would permit them to pursue benefits incurred during the year preceding the complaint. The defendant insurer argued that the date of the assignment provided the applicable reference date for purposes of the one-year-back rule. This Court in *Shah* reasoned that:

> "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt* [*v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004).] For that reason, plaintiffs could not obtain any greater rights from Hensley on the date of the assignments – July 11, 2017 – than Hensley himself possessed on that date. Had Hensley filed an action directly against defendant on July 11, 2017, he would not have been permitted to recover benefits for any portion of the loss incurred one year before that date. MCL 500.3145(1). Accordingly, plaintiffs also could not obtain any right to recover benefits for losses incurred more than one year before July 11, 2017, through an assignment of rights from Hensley. [*Shah*, 324 Mich App at 204.]

Applying the reasoning of *Shah*, plaintiff in this case could not acquire any rights greater than what Ellis possessed at the time of the assignment. Had Ellis filed suit against defendants directly on June 11, 2017, the one-year-back rule would have precluded him from recovering benefits for any portion of the loss incurred more than one year before that date. MCL 500.3145(1); *Shah*, 324 Mich App at 204. That is, on June 11, 2017, Ellis no longer had a right to payment of benefits for medical services obtained in March and April 2016. Accordingly, the June 11, 2017 assignment from Ellis could not confer upon plaintiff a right to recover benefits more than one year before that date because Ellis himself did not possess that right. See *id*. Because plaintiff's complaint in this case seeks to recover payment for medical services rendered before that date, the trial court did not err in determining that the one-year-back rule precludes recovery of the benefits sought in plaintiff's complaint by virtue of the June 11, 2017 assignment. See MCL 500.3145(1); *Shah*, 324 Mich App at 204.

---

[2] This Court in *Shah* found that the plaintiffs were actually attempting to supplement their complaint, and that although an amended pleading relates back to the date of the original pleading under MCR 2.118(D), the relation-back doctrine did not apply to a supplemental pleading. *Shah*, 324 Mich App at 203.

E. CONSENT TO TREAT FORMS

The pivotal inquiry in this case, then, is whether, as plaintiff contends, the Consent to Treat forms signed by Ellis in March and April 2016 were valid assignments of Ellis' right to payment under the no-fault act. Plaintiff argues that the trial court erred when it held that the forms were not valid assignments and operated only as Ellis' agreement to pay for treatment. Defendants argue that if the Consent to Treat forms are an attempt to assign rights under the act, they are invalid because they attempt to assign future rights. Although the trial court was incorrect that the Consent to Treat forms do not represent an attempt by Ellis to assign his cause of action to plaintiff, defendants are correct that the Consent to Treat forms attempt to assign future rights and therefore are invalid.

Under the no-fault act, "[a]n agreement for assignment of a right to benefits payable in the future is void." MCL 500.3143. However, "the statute serves only to ban the assignment of benefits payable in the future and not those that are past due or presently due." *Prof Rehab Assoc*, 228 Mich App at 172.

In this case, the trial court found that "Plaintiff's proffered March 15, 2016 and April 13, 2016 purported assignments are in fact general consent forms, which obligate Steven Ellis as responsible party for payment of medical services, and fail to assign a cause of action." The trial court's ruling suggests that the Consent to Treat forms were not intended by Ellis to be assignments. However, the language of the Consent to Treat forms unambiguously provides "I assign and authorize payment to be made directly to the hospital . . . healthcare benefits otherwise payable to me. . . ." This Court has stated that "[u]nder Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer 'the thing' to the assignee." *Burkhardt v Bailey*, 260 Mich App 636, 654-655; 680 NW2d 453 (2004). We conclude that the language of the Consent to Treat forms in this case unambiguously reflects the intent of Ellis to assign his rights.

The next question is whether Ellis successfully assigned the right to payment in this case. We conclude that he did not. As noted, the no-fault act precludes the assignment of the right to future benefits. MCL 500.3143. In this case, the assignment language attempts to assign a future right, not a past or present right. Ellis signed the Consent to Treat forms upon his admission to the hospital on March 15, 2016 and again on April 13, 2016, before any services were provided. In *Aetna Cas & Surety Co v Starkey*, 116 Mich App 640, 642, 646; 323 NW2d 325 (1982),[3] this Court declined to enforce an assignment of benefits that "would become payable" over the course of the assignor's hospital stay. See *Prof Rehab Assoc*, 228 Mich App at 173.

Similarly, in *Prof Rehab Assoc*, this Court found the assignment language to be ambiguous as to whether the language was intended to assign future benefits when it assigned

---

[3] A decision of this Court issued before November 1, 1990, though imposing binding precedent on trial courts, is not binding precedent for subsequent panels of the Court of Appeals. *Andrusz v Andrusz*, 320 Mich App 445, 457 n 2; 904 NW2d 636 (2017).

benefits "for services provided by Professional Rehabilitation Associates in connection with injuries to Clifford Lay arising out of an automobile accident." *Id*. In that case, this Court held that the assignment was void to the extent that it attempted to assign future benefits, but was valid to the extent that it intended to assign the right to recover payment for past due or presently due services. *Id*. at 173-174.

Plaintiff directs this Court to the opinion of the federal district court[4] in *Michigan Ambulatory Surgical Ctr, LLC v State Farm Mut Auto Ins Co*, opinion of the United States District Court for the Eastern District of Michigan, issued March 30, 2018, (Case No. 16-cv-14507), wherein the court found that the assignment signed by the patient upon her admission to the medical center was valid because it was written in the present tense, stating "I hereby assign to Specialty Surgical Center ("the Center") my rights to collect no-fault insurance from my auto insurer for my care at the Center" and "I assign and authorize payment directly to Michigan Surgical Hospital of any healthcare benefits that I am entitled to receive." *Id*. at 6. The federal district court reasoned that unlike the assignment in *Starkey*, the assignment language in that case "essentially assigned [Ms. Burrell's] rights as they came into existence." The federal district court thus concluded that although the medical services had not yet been provided when the patient assigned the right to payment, it was essentially "close enough" in time to the services being provided that it did not constitute the assignment of a future benefit. This conclusion, however, is not consistent with the statutory prohibition of assignment of future rights. MCL 500.3143.

In this case, the language of the Consent to Treat forms suggests that Ellis was assigning a future right, which would be void. He had not yet received any medical services at the time he signed each form, so assigning any right for the anticipated medical services would, of necessity, be the assignment of a future right. As in *Starkey*, which held that language attempting to convey benefits that "would become payable" was void as an assignment of future rights, Ellis' assignments in the Consent to Treat forms were invalid as an attempt to assign future rights. *Starkey*, 116 Mich App at 646. As an assignment of future rights, Ellis' assignments on March 15, 2016 and April 13, 2016 are void under MCL 500.3143. The trial court therefore did not err in granting defendants summary disposition, concluding that plaintiff did not have a valid assignment from Ellis under which it could proceed.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica

---

[4] The opinions of lower federal courts are not binding upon this Court, but may be viewed as persuasive. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).