*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN AMBULATORY SURGICAL
CENTER,

        Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellant.

FOR PUBLICATION
November 19, 2020

No. 349706
Oakland Circuit Court
LC No. 2019-172994-NF

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

SWARTZLE, J. (*dissenting*).

Philosophically, I have deep sympathy for the majority opinion. The freedom to contract is one of the cornerstones of the rule of law, along with due process, equal protection, private property, and the First Amendment. There is nothing in this record to suggest that, when entering into the settlement agreement with the anti-assignment clause, Tracy was incompetent or somehow coerced into agreeing to the clause. Tracy received valuable consideration in exchange for the clause and the settlement agreement's other provisions, and ordinarily, that would be the end of the story—enforce the anti-assignment clause and grant summary disposition in favor of defendant.

Jurisprudentially, however, I cannot sign onto the majority opinion, as this case does not come to us *tabula rasa*. Rather, we are bound by another cornerstone of the rule of law—the principle of stare decisis, especially in the context of binding precedent from both a prior panel and a higher court. See MCR 7.215(C)(2). Because I can find no legitimate basis for distinguishing this case from this Court's earlier published decision in *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 200; 920 NW2d 148 (2018), I must dissent.

From my reading of *Shah*, the material factual points are these: (1) the insured had coverage for no-fault benefits with the insurer; (2) the insured was injured in a motor-vehicle accident; (3) the insured and the insurer had a contract with an anti-assignment clause; (4) after executing the contract with the anti-assignment clause, the insured received medical services, and, in exchange

-1-

for the services, the medical provider was owed payment; (5) the insured had an accrued claim against the insurer for payment of the medical services; (6) the insured assigned the accrued claim to the medical provider in satisfaction of the insured's liability to the medical provider; and (7) the medical provider sought payment from the insurer, but based on the anti-assignment clause, the insurer refused to pay. *Id*. at 186-190. Despite the general freedom to contract, the Court in *Shah* held that the anti-assignment clause was unenforceable as against public policy, and as a result, the medical provider could pursue an action against the insurer for the unpaid claim.

Each one of the material factual points in *Shah* exists in the current case. Why it matters that the anti-assignment clause was found in the original insurance contract (*Shah*) or in a subsequent settlement agreement (here) is lost on me, given that the key feature—the insured "had an accrued claim against his [or her] insurer for payment of healthcare services that had already been provided before [the insured] executed the assignment," *Shah*, 324 Mich App at 200—is the same in both situations.

The majority places great weight on the rather thin reed that the anti-assignment clause in this case is found in a settlement agreement with a merger clause, whereas the anti-assignment clause in *Shah* was found in an insurance contract. But while asserting that the distinction matters, the majority does not explain *why* it matters, except to say that setting aside the anti-assignment clause in the settlement agreement may increase the liability of the insurer under the terms of that separate agreement. (Maj op at __.)

As all rather thin reeds must do, this one collapses upon inspection. In *Shah*, while setting aside the anti-assignment clause did not increase the insurer's liability under the insurance policy, it certainly did increase the risk that the insurer would be exposed to future litigation by unanticipated assignees. Thus, in *Shah*, the insurer did not get the full benefit of its bargain with the insured, as the insurer presumably put some value on the anti-assignment clause in the insurance policy and factored that value into the price of the policy. Similarly, were the majority to follow *Shah* here, setting aside the anti-assignment clause would not increase defendant's liability under the insurance policy (as the majority recognizes), but it certainly would increase the risk that defendant would be exposed to future litigation by unanticipated assignees—as this lawsuit aptly demonstrates. Thus, here (and tracking *Shah*), defendant would not get the full benefit of its bargain with Tracy, as defendant presumably put some value on the anti-assignment clause in the settlement agreement and factored that value into the consideration paid. From both a contractual and an economic perspective, the two scenarios are identical with respect to the risk of increased liability to the insurer. Simply put, the majority's distinction is without a difference.

Likewise with the merger clause. Whether found in a single insurance policy or in an insurance policy and a subsequent separate agreement, the fact remains that the relevant contractual provisions and factual scenarios are materially indistinguishable between the two cases. If the existence of a merger clause is actually *the* material distinction, then the majority has pointed future parties to a simple way to get around *Shah* at the outset—(1) enter into an insurance policy that (a) has no anti-assignment clause but (b) does have a merger clause; and, immediately following execution of that policy, (2) enter into a separate agreement that (a) has an anti-assignment clause and (b) also has a merger clause. The substance of the contractual relationship will be no different than in *Shah*, though the legal import will now be 180 degrees different.

With respect to MCL 500.3143, I have no truck with the majority's analysis, as the statute is silent with respect to anti-assignment clauses. Rather, the fundamental problem in *Shah* and this case is the weak foundation underlying our Supreme Court's decision from over 125 years ago, *Roger Williams Ins Co v Carrington*, 43 Mich 252; 5 NW 303 (1880). In that case, the Court referred to a purported "statute" that granted "the absolute right to every person . . . to assign such claims, and such a right cannot be thus prevented." *Id.* at 254. The Court did not actually cite to a statute, however, and my research has not yet unearthed that statute. The Court seems to have announced the absolute right to assign such a claim as a matter of public policy. Maybe there are good reasons to have this policy, but it does fly against the bedrock principle of freedom to contract. In my opinion, exceptions to the freedom to contract should be few-and-far between, and certainly should be better supported with law and logic than what is found in *Roger Williams*.

With that said, the holding in *Roger Williams* is clear, as is the holding in *Shah*, and I do not believe that we have a sound basis for distinguishing either one. Until (hopefully) our Supreme Court revisits *Roger Williams*, we are bound by the holding in that decision, as *Shah* recognized. Accordingly, contrary to the majority's holding, I conclude that *Shah* controls here and the anti-assignment clause in the parties' settlement agreement should not preclude the medical provider's cause of action.

For these reasons, I respectfully dissent.


/s/ Brock A. Swartzle