# STATE OF MICHIGAN

# COURT OF APPEALS

JAWAD A. SHAH, M.D., PC, INTEGRATED
HOSPITAL SPECIALISTS, PC, INSIGHT
ANESTHESIA, PLLC, and STERLING
ANESTHESIA, PLLC,

Plaintiffs-Appellants,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee.

FOR PUBLICATION
May 8, 2018
9:00 a.m.

No. 340370
Genesee Circuit Court
LC No. 17-108637-NF

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

BORRELLO, P.J.

In this suit seeking recovery of medical expenses under the no-fault act, MCL 500.3101 *et seq*., plaintiffs, Jawad A. Shah, M.D., PC, Integrated Hospital Specialists, PC, Insight Anesthesia, PLLC, and Sterling Anesthesia, PLLC, appeal as of right the trial court's order granting summary disposition in favor of defendant, State Farm Mutual Automobile Insurance Company, and denying plaintiffs' motion for leave to amend their complaint as futile. For the reasons set forth in this opinion, we reverse the trial court's order and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

This case encompasses various providers of medical and related healthcare services attempting to recover from a no-fault insurer for services rendered to the insured, George Hensley. According to plaintiffs' initial complaint filed on February 24, 2017, Hensley was injured on November 30, 2014, in a motor vehicle accident and was insured by defendant. Plaintiffs submitted claims for services rendered to Hensley, but defendant refused to pay these claims. In their complaint, plaintiffs sought a judgment of approximately $82,000, plus interest and reasonable attorney fees. Defendant answered the complaint and filed its affirmative defenses on April 21, 2017, denying liability.

On May 25, 2017, our Supreme Court issued its opinion in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). In *Covenant*, our Supreme Court held "that healthcare providers do not possess a statutory cause of action against no-fault insurers

-1-

for recovery of personal protection insurance benefits under the no-fault act," expressly overruling a body of caselaw from this Court that had concluded to the contrary. *Id*. at 196. In explaining its holding, the *Covenant* Court rejected the notion that a medical provider had independent standing to bring a claim against an insurer to recover no-fault benefits. *Id*. at 195. However, the Court clarified that its decision was "not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40.

On July 20, 2017, defendant moved for summary disposition pursuant to MCR 2.116(C)(8). Defendant argued that dismissal was required for failure to state a claim because plaintiff's no-fault claim was "in direct contravention of the Michigan Supreme Court's decision in *Covenant*."

Apparently anticipating defendant's motion, plaintiffs had obtained an assignment of rights from Hensley on July 11, 2017[1] to pursue payment of no-fault benefits for healthcare services "already provided" by plaintiffs.[2] Plaintiffs relied on this assignment to then file a

---

[1] We note that there are four assignments attached to plaintiff's brief in opposition to defendant's motion for summary disposition and that two of those assignments explicitly designate plaintiffs Jawad A. Shah, M.D., PC, and Integrated Hospital Specialists, PC, as assignees. However, the names of the designated assignees in the other two assignments do not match the names of the remaining two plaintiffs. Nonetheless, in the trial court, defendant conceded in its reply brief in support of its summary disposition motion that Hensley had executed an assignment to each plaintiff. Thus, as will be further explained below, it appears that the parties assumed that all plaintiffs received assignments of rights from Hensley and that the parties essentially disputed only (1) whether these assignments were valid in light of the anti-assignment clause in Hensley's insurance policy and (2) whether an amended complaint based on such an assignment would relate back to the date of the original complaint. For purposes of this opinion, we assume without deciding that the assignments effectively assigned the stated rights to plaintiffs in this case as long as such assignments were not barred by the anti-assignment clause. The only issue with respect to the validity of the assignments that was actually raised and decided in the trial court was the effect of the anti-assignment clause. Therefore, we limit our review accordingly to this issue. See *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994).

[2] The assignment of rights forms provided in pertinent part that Hensley was assigning

> all rights, privileges and remedies to payment for health care services, products or accommodations ("Services") provided by Assignee to Assignor to which Assignor is or may be entitled under MCL 500.3101, *et seq*, the No Fault Act. This Assignment is for the right to payment of Assignee's charges, only, and not for the right to payment of any other No Fault insurance benefits.
>
> The Assignment as set forth above is for all services already provided to Assignor by Assignee prior to or at the time of Assignor's execution of this agreement. Specifically, this Assignment **does not** include an Assignment of any future No Fault benefits.

response to the summary disposition motion and a motion for leave to amend the complaint to reflect that the suit was being pursued through the assignment of rights obtained from Hensley. Plaintiffs argued that it was necessary to amend the complaint to allow the action to proceed pursuant to their respective assignments because the *Covenant* decision had extinguished their ability to pursue an independent, direct action against defendant under these circumstances. Again showing foresight in anticipating defendant's next tactical decision, plaintiffs also preemptively argued that if the trial court were to determine that a contractual provision within defendant's policy prevented assignments, then such a provision should not be enforced for one of two reasons. First, plaintiffs argued that defendant would have to show that Hensley was a named insured under the policy (rather than, for example, a passenger entitled to benefits under someone else's policy) for the anti-assignment clause to be enforced against him. Second, plaintiffs argued that the anti-assignment clause was voidable as against public policy where the assignment was obtained after the loss occurred. Furthermore, in an effort to avoid problems with the one-year-back rule of MCL 500.3145(1), plaintiffs also argued that the amended complaint should relate back to the date of the original complaint because the amendment to accommodate the assignments was intended to support the previously filed no-fault claim that arose from the same transaction or occurrence, namely Hensley's injuries sustained in the November 20, 2014 accident. Plaintiffs did not contend that *Covenant* was inapplicable to their suit.

On September 7, 2017, defendant filed a reply in support of its summary disposition motion. As plaintiffs anticipated, defendant argued that an anti-assignment clause in the policy rendered any assignment of rights from Hensley void. Accordingly, defendant argued that plaintiffs' claims should be dismissed because the anti-assignment clause must be enforced as written and was not against public policy. Defendant also argued that the one-year-back rule of MCL 500.3145(1) would bar the assigned claims, or a portion of the assigned claims, even if the assignments were considered valid. Defendant explained that plaintiffs could not obtain any greater rights than those held by Hensley at the time of the assignments. Had Hensley brought suit on the date of the assignments, he could not have obtained damages for any expenses incurred more than a year before that date. Defendant argued that plaintiffs stood in the shoes of Hensley after the assignments and could not obtain any greater rights than this. Defendant also asserted that Hensley had his own lawsuit that had already been resolved and was no longer pending. Defendant further argued that the relation-back doctrine would not apply because the assignment did not exist on the date plaintiffs originally filed their complaint. Defendant contended that plaintiffs were not really seeking an amendment that could relate back to the original complaint pursuant to MCR 2.118(D) but were actually attempting to supplement their complaint pursuant to MCR 2.118(E) in order to allege a subsequently acquired assignment. Defendant explained that supplemental pleadings never relate back to the date of the original pleading. Finally, defendant explained that Hensley was indeed a named insured, and it provided a copy of the declarations page as support.

On the same day, defendant also filed a response to plaintiffs' motion for leave to amend their complaint. Defendant raised the same arguments made in its reply brief and argued that for these reasons, any amendment was futile because the cause of action that plaintiff was attempting to add was legally insufficient on its face.

A hearing on the motions was held on September 11, 2017. The parties' oral arguments reiterated the arguments made in their written submissions. The trial court ruled as follows:

> All right, the Court read both of the motions and the briefs, as well as the second motion, which is the motion for leave to file an amended complaint. As I said they interrelate and the circumstances are that Shah was a provider or plaintiffs were health providers – health services care providers for the insured George Hensley. And apparently only after the covenant [sic, *Covenant* decision] did an assignment take place and the policy language of the State Farm policy, which Mr. Hensley purchased precludes the assignment without approval of State Farm, which did not occur. So actually (inaudible) did not acquire any rights by virtue of the assignment.
>
> And in addition, as pointed out by defense counsel, if it had been granted it would have been a supplemental pleading and the date would be barred under the statute of limitations. You may submit an order if you don't have one here today.

The trial court clarified that it was granting defendant's motion for summary disposition, denying leave to file an amended complaint as futile, and dismissing the case with prejudice. The trial court entered an order[3] granting summary disposition pursuant to MCR 2.116(C)(8) and dismissing the case with prejudice "for the reasons stated on the record."

This appeal followed.

## II. ANALYSIS

### A. RETROACTIVITY OF *COVENANT* DECISION

Plaintiffs first argue that our Supreme Court's decision in *Covenant* should not apply retroactively but should instead be given prospective effect only.

Whether a judicial decision applies retroactively is a question that this Court reviews de novo. *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 168; ___ NW2d ___ (2017). However, plaintiffs never challenged the retroactive application of *Covenant* or the applicability of *Covenant* to this case in the trial court. In fact, plaintiffs appeared to concede in the trial court that *Covenant* was retroactively applicable and was consequently controlling in this case. Therefore, we must first address whether plaintiffs preserved their argument that *Covenant* should apply prospectively only and not retroactively to the instant case.

"Michigan generally follows the 'raise or waive' rule of appellate review." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (citation omitted). Accordingly, "[f]or an

---

[3] This order appears to be missing from the lower court file, however a true copy of this order was provided to this Court on appeal.

-4-

issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (quotation marks and citation omitted). The failure to timely raise an issue typically waives appellate review of that issue. *Walters*, 481 Mich at 387. Our Supreme Court has explained the rationale for the preservation requirements as follows:

> The principal rationale for the rule is based in the nature of the adversarial process and judicial efficiency. By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually. This practice also avoids the untenable result of permitting an unsuccessful litigant to prevail by avoiding its tactical decisions that proved unsuccessful. Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute. [*Walters*, 481 Mich at 388 (citations omitted).]

"Although this Court need not review issues raised for the first time on appeal, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (citations omitted). However, while an appellate court has the inherent power to review an unpreserved claim of error, our Supreme Court has emphasized the fundamental principles that "such power of review is to be exercised quite sparingly" and that the inherent power to review unpreserved issues "is to be exercised only under what appear to be compelling circumstances to avoid a miscarriage of justice or to accord a [criminal] defendant a fair trial." *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987) (quotation marks and citation omitted; alteration in original).

In this case, plaintiffs assert that this issue is preserved for appellate review without identifying a single place in the lower court record where they argued that *Covenant* should not apply retroactively to the instant case. As previously noted, plaintiffs actually treated the *Covenant* decision as the controlling law at all times following the issuance of that decision, arguing that it was necessary to amend the original complaint because the *Covenant* decision had extinguished plaintiffs' independent cause of action against defendant that was not premised on an assignment of rights from Hensley. On appeal, plaintiffs essentially argue they never contested the application of *Covenant* in the trial court, their appellate challenge to the propriety of that retroactive application is somehow automatically preserved because the *Covenant* decision was actually applied retroactively in the trial court and because defendant responded to plaintiffs' arguments on appeal.[4] This argument ignores the fundamentals of appellate

---

[4] We note that the primary thrust of defendant's appellate argument in response to plaintiffs' retroactivity argument is that plaintiffs failed to preserve this issue for appeal.

preservation law requiring parties to first raise issues in the lower court to be addressed in that forum. *Walters*, 481 Mich at 387; *Mouzon*, 308 Mich App at 419. Therefore, plaintiffs have waived appellate review of this issue. *Walters*, 481 Mich at 387. Plaintiffs may not remain silent in the trial court and then hope to obtain appellate relief on an issue that they did not call to the trial court's attention. *Id*. at 388; see also *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014) ("A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute.") (quotation marks and citation omitted).

We further conclude that there is no apparent reason for us to exercise our discretion to review this issue. It does not present a question that must be addressed in order to properly resolve this case and no manifest injustice will result if we decline to review it; as explained below, plaintiffs' legal argument is unavailing because *Covenant* has already been determined to be retroactive in published decisions of this Court. Moreover, a litigant in a civil case must demonstrate more than a potential monetary loss to show a miscarriage of justice or manifest injustice. See *Napier*, 429 Mich at 234. Accordingly, we decline to review plaintiffs' various arguments that *Covenant* is inapplicable to the instant case and should be given prospective application only.[5]

Furthermore, as we alluded to, plaintiffs' argument is without merit even if they had not waived this issue for appellate review. This Court has already held in two recent published decisions that *Covenant* applies retroactively. See *W A Foote*, 321 Mich App at 196; *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 328005); slip op at 4.[6] We are bound by the holdings in *WA Foote* and *VHS Huron Valley*.

---

[5] We acknowledge that decisions of our Supreme Court and this Court have applied the plain error standard of review to certain unpreserved issues in the civil context. See, e.g., *Wischmeyer v Schanz*, 449 Mich 469, 483 & n 26; 536 NW2d 760 (1995); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). However, we do not decide today under what circumstances the plain error standard of review should be applied in the civil context. In this case, we simply conclude that there is no need to review plaintiffs' unpreserved issue *at all* because it was waived and no compelling circumstances exist to justify appellate review.

We also recognize the general distinction between forfeiture and waiver, but, as our Supreme Court has explained, the term "waiver" in the civil procedure context "is typically used in the colloquial sense, encompassing inaction that would technically constitute forfeiture." *Walters*, 481 Mich at 384 n 14. That is exactly what happened in this case: plaintiffs failed to raise any argument in the trial court challenging the applicability of the *Covenant* decision to this case, thereby waiving appellate review of any such challenge, and none of the reasons that would justify exercising our discretion to disregard the preservation requirements exist.

[6] We note that this Court declined in both *W A Foote* and *VHS Huron Valley* to decide whether *Covenant* was to be given limited or full retroactive effect because that question was not necessary to the resolution in either of those cases. See *W A Foote*, 321 Mich App at 174 n 9; *VHS Huron Valley*, ___ Mich App at ___; slip op at 4. However, plaintiffs have not provided any discussion or legal analysis addressing whether *Covenant* should receive limited or full retroactive effect in the instant case. Therefore, any such argument is abandoned. See *Wilson v*

-6-

See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."). And furthermore, whether an application for leave to appeal to our Supreme Court has been filed in a case[7] is irrelevant: "The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C)(2).

Therefore, even if this issue had not been waived for our review, *Covenant* is applicable to the instant case, *W A Foote*, 321 Mich App at 196; *VHS Huron Valley*, ___ Mich App at ___; slip op at 4; MCR 7.215(C)(2), and plaintiffs "do not possess a statutory cause of action" against defendant as a no-fault insurer to recover personal protection insurance benefits under the no-fault act, *Covenant*, 500 Mich at 196.

B. ENFORCEABILITY OF CONTRACT PROVISION PROHIBITING ASSIGNMENT

Next, plaintiffs argue that the anti-assignment clause in the insurance policy is unenforceable to prevent the assignment that occurred in this case.

Insurance policies are contracts, and are thus "subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are . . . reviewed de novo." *Id*. at 464. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. "[U]nambiguous contracts are not open to judicial construction and must be enforced as written." *Id*. at 468 (emphasis omitted). "[T]he judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties . . . ." *Id*. at 461.

However, our Supreme Court has also recognized that "courts are to enforce the agreement as written *absent some highly unusual circumstance such as a contract in violation of law or public policy*." *Id*. at 469 (quotation marks and citation omitted; emphasis added). "A mere judicial assessment of 'reasonableness' is an invalid basis upon which to refuse to enforce contractual provisions," and "[o]nly recognized traditional contract defenses may be used to avoid the enforcement of the contract provision." *Id*. at 470. With respect to determining

_____

*Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted); *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

[7] We note that an application for leave to appeal to our Supreme Court has been filed in both *W A Foote* and *VHS Huron Valley*.

whether a contractual provision violates public policy, our Supreme Court explained in *Rory* that "the determination of Michigan's public policy is not merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law." *Id*. at 470-471 (quotation marks and citation omitted). "In ascertaining the parameters of our public policy, we must look to policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Id*. at 471 (quotation marks and citation omitted).

"Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). Defendant argues in this case that the present matter is one where Hensley's ability to assign his rights is prohibited by a specific contractual provision. The insurance policy states, "No assignment of benefits or other transfer of rights is binding upon *us* [(i.e., defendant)] unless approved by *us*." Despite plaintiffs' newly-raised arguments to the contrary, the language of this provision is perfectly clear.[8] In order for any benefits or rights to be assigned to anyone other than the insured, defendant must consent to the assignment. The assignments at issue attempt to do just that, assigning the right to claim benefits held by Hensley to plaintiffs, and it is undisputed that defendant did not consent to these assignments. The appellate courts of Michigan have previously recognized the enforceability of anti-assignment clauses that are clear and unambiguous. See *Detroit Greyhound Employees Fed Credit Union v Aetna Life Ins Co*, 381 Mich 683, 689-690; 167 NW2d 274 (1969); *Employers Mut Liability Ins Co of Wisconsin v Mich Mut Auto Ins Co*, 101 Mich App 697, 702; 300 NW2d 682 (1980). Thus, because the anti-assignment clause is unambiguous, it must be enforced unless it violates the law or public policy. *Rory*, 473 Mich at 468-469.

Resolution of this issue turns on the application of our Supreme Court's decision in *Roger Williams Ins Co v Carrington*, 43 Mich 252; 5 NW2d 303 (1880). In *Roger Williams*, an insurance policy was issued covering livery stable property. *Id*. at 253. The property was destroyed in a fire. *Id*. After the fire, the insured assigned the policy to secure a debt. *Id*. at 253-254. Our Supreme Court refused to enforce an anti-assignment clause in that matter, explaining:

> The assignment having been made after the loss did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action. It is the absolute right of every person—secured in this state by statute—to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy. [*Id*. at 254.]

Here, the parties provide no authority, and we have found none, explicitly rejecting this analysis in *Roger Williams*. Moreover, it has been deemed controlling on this point of law in at

---

[8] Plaintiffs did not argue in the trial court that the anti-assignment clause was ambiguous, and this argument is therefore waived for appellate review. *Walters*, 481 Mich at 387.

least two relatively recent[9] opinions of the United States District Court for the Western District of Michigan,[10] *Century Indemnity Co v Aero-Motive Co*, 318 F Supp 2d 530, 539 (WD Mich, 2003) (relying on *Roger Williams* while explaining that under Michigan law, "an anti-assignment clause will not be enforced where a loss occurs before the assignment, because in that situation the assignment of the claim under the policy is viewed no differently than any other assignment of an accrued cause of action."); *Action Auto Stores, Inc v United Capitol Ins Co*, 845 F Supp 417, 422-423 (WD Mich, 1993) (citing *Roger Williams* in support of the proposition that a provision prohibiting assignment without consent of the insurer was invalid with respect to a post-loss assignment).

Our Supreme Court in *Roger Williams* essentially held that an accrued cause of action may be freely assigned after the loss and that an anti-assignment clause is not enforceable to restrict such an assignment because such a clause violates public policy in that situation. *Roger Williams*, 43 Mich at 254. Here, there similarly was an accrued claim against his insurer that was held by Hensley for payment of health care services that had already been provided by plaintiffs before Hensley executed the assignment. Under *Roger Williams*, any contractual prohibition against the assignment of that claim to plaintiffs was unenforceable because it was against public policy. *Id*.

Therefore, we conclude that enforcement of the anti-assignment clause in the instant case is unenforceable to prohibit the assignment that occurred here—an assignment after the loss occurred of an accrued claim to payment—because such a prohibition of assignment violates Michigan public policy that is part of our common law as set forth by our Supreme Court. *Roger Williams*, 43 Mich at 254; *Rory*, 473 Mich at 469-471.

We note that, contrary to the arguments advanced by defendant, the conclusion that a contractual provision is unenforceable due to violating public policy is not equivalent to a judicial assessment of unreasonableness, nor is it in conflict with the principle that unambiguous contracts must be enforced as written. Our Supreme Court has made clear that judicial notions of reasonableness are not proper grounds on which to hold contractual provisions unenforceable. *Rory*, 473 Mich at 470. Our Supreme Court has also made clear that unambiguous contractual provisions are "to be enforced as written *unless the provision would violate law or public policy*." *Id*. (emphasis added). Defendant's arguments appear to incorrectly conflate the concept of "reasonableness" with "public policy." Our decision is not based on any determination that the anti-assignment clause is somehow "unreasonable." Rather, we have simply concluded that enforcing the anti-assignment clause in this circumstance to prohibit an assignment of an accrued claim after the loss has occurred is against Michigan public policy as stated by our Supreme Court one hundred and thirty-eight years ago in *Roger Williams*. Finally, defendant takes issue

---

[9] While we recognize that cases from 1993 and 2003 are not exactly recent in the ordinary sense, they certainly are recent when compared to a case from 1880.

[10] We recognize that lower federal court decisions are not binding on state courts, but they may be considered persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

with the continued validity of our Supreme Court's holding in *Roger Williams* and its application in the instant case. However, as our Supreme Court has instructed, we are bound to follow its decisions "except where those decisions have *clearly* been overruled or superseded." *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016). There is no indication that *Roger Williams* or its holding relating to anti-assignment clauses has been clearly overruled or superseded. Thus, if the continued validity of *Roger Williams* is to be called into question, it will have to be by our Supreme Court.

Plaintiffs also raise several additional grounds for arguing that the anti-assignment clause is unenforceable to prevent the assignment at issue in this case. However, plaintiffs did not raise these additional arguments below and they are thus waived for appellate review. *Walters*, 481 Mich at 387. Nonetheless, based on our conclusion that the anti-assignment clause did not prohibit the assignments at issue in this case, there is no further relief on this issue that we could grant to plaintiffs, and these additional arguments are therefore moot. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). We decline to address these arguments because we generally do not decide moot issues. *Id*.

### C. Effect of the assignments with respect to the one-year-back rule

Next, plaintiffs argue that the trial court should have granted their motion for leave to amend the complaint to account for the assignments and that such an amendment should have related back to the date of the original complaint. In light of our conclusion that the assignments were not prohibited by the anti-assignment clause, the issue to be addressed on appeal becomes determining the effect of the assignments at issue with respect to the one-year-back rule in MCL 500.3145(1). Clearly, we must address this question first before we can address the final, and interrelated, questions of whether the trial court erred by granting defendant's summary disposition motion and denying plaintiffs' motion for leave to amend the complaint.

MCL 500.3145(1) provides in pertinent part that "the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." The "one-year-back rule" in MCL 500.3145(1) "is designed to limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012).

The instant case presents an unusual situation with respect to the one-year-back rule because plaintiffs began this case on February 24, 2017, as a direct lawsuit filed against defendant insurer under pre-*Covenant* caselaw but sought to amend the complaint to bring the action based on an assignment theory after the *Covenant* decision was issued. Plaintiffs obtained the assignments from Hensley on July 11, 2017. Plaintiffs argue that they may amend their complaint to account for the assignment-of-rights theory and that such an assignment should relate back to the date of the original complaint, which would allow them to pursue benefits incurred during the year preceding the date of February 24, 2017. Defendant, on the other hand, argues that the date of the assignments—July 11, 2017—provides the pertinent reference date for purposes of the one-year-back rule because plaintiffs' motion actually sought leave to file a supplemental pleading rather than an amended pleading.

-10-

The rule regarding the relation back of amended pleadings is contained in MCR 2.118(D), which provides in pertinent part that an "amendment that adds a claim or defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." However, while an amended pleading may relate back to the date of the original pleading, "there is no provision for relating back as to supplemental pleadings." *Grist v Upjohn Co*, 1 Mich App 72, 84; 134 NW2d 358 (1965).[11] Supplemental pleadings are governed by MCR 2.118(E), which provides in pertinent part as follows:

> On motion of a party the court may, on reasonable notice and on just terms, permit the party to serve a supplemental pleading to state transactions or events that have happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a claim for relief or a defense.

Further, the "relation-back doctrine does not apply to the addition of new parties." *Miller v Chapman Contracting*, 477 Mich 102, 106; 730 NW2d 462 (2007) (quotation marks and citation omitted).

In this case, after the *Covenant* decision was issued, plaintiffs sought to amend their complaint to account for the assignments obtained from Hensley and allow plaintiffs to pursue an action against defendant insurer. "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt*, 260 Mich App at 653. Thus, plaintiffs could not obtain any greater rights from Hensley on the date of the assignments—July 11, 2017—than Hensley himself possessed on that date. Had Hensley filed an action directly against defendant on July 11, 2017, he would not have been permitted to recover any benefits beyond the portion of the loss incurred one year before that date. MCL 500.3145(1). Accordingly, plaintiffs also could not obtain any right to recover benefits for losses incurred more than one year before July 11, 2017, through an assignment of rights from Hensley. *Burkhardt*, 260 Mich App at 653. Furthermore, the procurement of the assignments was an event that occurred after the filing of the original complaint and provided the only means by which plaintiffs could have standing to maintain a direct action against defendant insurer for recovery of no-fault benefits in this case. *Covenant*, 500 Mich at 195-196, 217 n 40. Therefore, defendant's motion for leave to amend actually sought leave to file a supplemental pleading. MCR 2.118(E). Courts "are not bound by a party's choice of labels because this would effectively elevate form over substance." *Adams v Adams*, 276 Mich App 704, 715; 742 NW2d 399 (2007).

Because plaintiffs actually sought to file a supplemental pleading, it could not relate back to the date of the original pleading. MCR 2.118(D) and (E); *Grist*, 1 Mich App at 84. Through the assignment, plaintiffs only obtained the rights Hensley actually held at the time of the

---

[11] Although the *Grist* Court was discussing GCR 1963, 118.5, this former court rule was substantively the same as the current court rule addressing supplemental pleadings, which is MCR 2.118(E).

execution of the assignment, *Burkhardt*, 260 Mich App at 653, and plaintiffs cannot rely on the relation-back doctrine to essentially gain the potential for a greater right to recovery than they actually received. As our Supreme Court explained in *Jones v Chambers*, 353 Mich 674, 681-682; 91 NW2d 889 (1958):[12]

> The assignment created nothing. It simply passed to plaintiffs' insurer rights already in existence, if any. If plaintiffs' insured had no rights, then plaintiffs' insurer acquired none by virtue of the assignment. To rule otherwise would be to give such an assignment some strange alchemistic power to transform a dross and worthless cause of action into the pure gold from which a judgment might be wrought. [Quotation marks omitted.]

Therefore, through the assignments in this case, plaintiffs did not obtain the right to pursue no-fault benefits for any portion of the loss incurred more than one year before July 11, 2017, because that is the pertinent point of reference for purposes of the one-year-back rule. A supplemental pleading predicated on the July 11, 2017 assignments could not relate back to the date of the original pleading.

## D. APPLICATION

We now turn to the trial court's final ruling granting summary disposition in favor of defendant and denying plaintiffs' motion for leave to amend.

"This Court reviews de novo the trial court's decision to grant or deny summary disposition." *Rory*, 473 Mich at 464. The trial court granted summary disposition pursuant to MCR 2.116(C)(8).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999) (citations omitted).]

However, we note that the trial court clearly considered material outside the pleadings, contrary to the proper procedure for considering a motion under MCR 2.116(C)(8). The insurance policy that contained the anti-assignment clause was crucial to the trial court's decision that plaintiffs could not maintain any claim against defendant predicated on assignments from Hensley; this insurance policy was attached to defendant's reply brief in support of its

---

[12] Although the language from *Jones* that we have quoted was a quotation attributed to the circuit court judge in that case, our Supreme Court explicitly adopted this reasoning. *Jones*, 353 Mich at 682.

motion for summary disposition and defendant's response to plaintiffs' motion for leave to amend the complaint. Furthermore, the assignments on which plaintiffs relied were attached to plaintiffs' brief in opposition to the motion for summary disposition, as well as plaintiffs' brief in support of their motion for leave to amend the complaint. While a written instrument that forms the basis for a claim or defense and that is attached to or referred to in a pleading may be treated as "part of the pleading for all purposes," MCR 2.113(F), neither the assignments nor the insurance policy were attached to or referred to in a *pleading*, MCR 2.110(A) (defining the term "pleading" to include only a complaint, cross-claim, counterclaim, third-party complaint, an answer to any of the aforementioned pleadings, or a reply to an answer).

Thus, we treat the motion as having been brought and decided under MCR 2.116(C)(10) because it necessarily involved considering material outside the pleadings.[13] Cf. *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007) ("[W]here, as here, the trial court considered material outside the pleadings, this Court will construe the motion as having been granted pursuant to MCR 2.116(C)(10).").

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120 (citations omitted).]

"The grant or denial of leave to amend pleadings is within the trial court's discretion." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006). A trial court's decision on whether to permit a party to serve a supplemental pleading is also discretionary. See MCR 2.118(E) (providing in pertinent part that the court "may, on reasonable notice and on just terms, permit the party to serve a supplemental pleading"); *In re Estate of Weber*, 257 Mich App 558, 562; 669 NW2d 288 (2003) ("[T]he term 'may' presupposes discretion and does not mandate an action."). "[A] motion to amend should ordinarily be denied only for particularized reasons, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility." *PT Today, Inc*, 270 Mich App at 143. "The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile." *Id*. "[A]mendment is generally a matter of right rather than grace." *Id*.

"This Court will not reverse a trial court's decision regarding leave to amend unless it constituted an abuse of that discretion that resulted in injustice." *Id*. at 142. "[A]n abuse of

---

[13] Moreover, neither party has argued in the trial court or on appeal that the trial court erroneously considered material outside the pleadings in treating the summary disposition as a motion under MCR 2.116(C)(8). Therefore, any potential appellate challenge on this ground is abandoned. *Houghton*, 256 Mich App at 339-340.

discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *In re Kostin*, 278 Mich App 47, 51; 748 NW2d 583 (2008). "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016); see also *Kidder v Ptacin*, 284 Mich App 166, 170; 771 NW2d 806 (2009) ("A court by definition abuses its discretion when it makes an error of law.") (quotation marks and citation omitted).

In this case, the trial court granted defendant's motion for summary disposition and denied plaintiffs' motion for leave to amend their complaint because the trial court concluded that the anti-assignment clause prohibited any assignment from Hensley and that any claims based on such an assignment would be time barred nonetheless.

"If a trial court grants summary disposition pursuant to MCR 2.116(C)(8), (C)(9), or (C)(10), the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Yudashkin v Linzmeyer*, 247 Mich App 642, 651; 637 NW2d 257 (2001) (quotation marks and citation omitted); see also MCR 2.116(I)(5) ("If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."). "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Yudashkin*, 247 Mich App at 651 (quotation marks and citation omitted). Under MCR 2.118(A)(2), a party may amend a pleading by leave of the court and such "[l]eave shall be freely given when justice so requires."

Here, as previously discussed, the anti-assignment clause was unenforceable to the extent that it prohibited the particular assignments at issue, and the one-year-back rule did not bar *all* of plaintiffs' claims but only those that were based on services provided more than one year before the date of the assignment. Accordingly, the trial court's decision was based on a misapplication of the law, and the trial court necessarily abused its discretion in denying plaintiffs the opportunity to serve its supplemental pleading. *Ronnisch*, 499 Mich at 552. Similarly, because the anti-assignment clause was not enforceable and the one-year-back rule did not bar all of plaintiffs' claims, the trial court erred by granting defendant's motion for summary disposition without properly applying the law in determining whether an amendment to the pleadings would be futile. *Rory*, 473 Mich at 464; *Yudashkin*, 247 Mich App at 651.

Defendant's remaining argument related to the jurisdictional minimum for the amount in controversy constitutes an argument that an alternate ground for affirming the trial court's ruling exists. This argument was not presented to the trial court. As an error-correcting court, *W A Foote*, 321 Mich App at 181, this Court's review is generally limited to matters actually decided by the lower court, *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994). We acknowledge that this Court may affirm the grant of summary disposition on an alternate ground that was not decided by the trial court when the issue was presented to the trial court. *Adell Broad v Apex Media Sales*, 269 Mich App 6, 12; 708 NW2d 778 (2005). However, it is apparent that the trial court's ruling in the instant case was based on an erroneous application of the pertinent legal principles since the trial court determined that the anti-assignment clause was enforceable in this case, contrary to Michigan public policy, and that the one-year-back rule would bar *all* of plaintiffs' claims even if the assignments had been treated as valid. Thus, we

conclude that it would be better for any additional matters relating to plaintiffs' proposed supplemental complaint to be addressed in the first instance by the trial court under the proper legal framework.

We reverse the order of the trial court and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. We decline to award taxable costs under MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Jonathan Tukel